FILED
2016 Sep-13  PM 03:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| **POLLY MITCHELL,** | ) | |
| | ) | |
| **Claimant,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **1:15-CV-000948-KOB** |
| **CAROLYN W. COLVIN,** | ) | |
| **ACTING COMMISSIONER OF** | ) | |
| **SOCIAL SECURITY,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM OPINION

## I. INTRODUCTION

On October 28, 2011, the claimant, Polly Mitchell, applied for Supplemental Security Income alleging that she became disabled on October 28, 2011 because of back and arm problems, poor vision, difficulty reading, and stress.  (R. 16, 23, 48, 190-95, 237).[1] The Commissioner initially denied the claimant's claims. (R. 13-29, 69).   The claimant filed a timely request for a hearing, and the Administrative Law Judge (ALJ) held a video hearing on April 24, 2012. (R. 31-54).

The ALJ found the claimant not disabled in a decision dated January 10, 2014. (R. 16-25).  The Appeals Council denied the claimant's request for review on May 6, 2015. Consequently, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration. (R. 1-6). The claimant has exhausted her administrative remedies, and

---

[1] Claimant initially alleged disability beginning June 1, 2010 ( R. 237), but later amended her alleged onset date to October 28, 2011 ( R. 148).

this court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons stated below, this court reverses and remands the decision of the Commissioner.

## II. ISSUE PRESENTED

Whether the ALJ erred as a matter of law in not considering Listing 12.05 (C) regarding the claimant's IQ score of 67.

## III. STANDARD OF REVIEW

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if she applied the correct legal standard and if substantial evidence supports his factual conclusions.  *Walker*, 826 F.2d at 999. This court does not review the Commissioner's factual determinations *de novo*. The court will affirm those factual determinations that are supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 402 (1971).

The court must keep in mind that opinions, such as whether a claimant is disabled, the nature and extent of a claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(d), 416.927(d). Whether the claimant meets the listing and is qualified for Social Security disability benefits is a question reserved for the ALJ, and the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Thus, even if the court were to disagree with the ALJ about the

2

significance of certain facts, the court has no power to reverse that finding as long as substantial evidence in the record supports it.

The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner]'s factual findings." *Walker*, 826 F.2d at 999. A reviewing court must not only look to those parts of the record that support the decision of the ALJ, but also must view the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

## IV. LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). To make this determination the Commissioner employs a five-step, sequential evaluation process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986)[2]; 20 C.F.R. §§ 404.1520, 416.920.

The Eleventh Circuit has determined that for a claimant to be disabled under Listing 12.05,

> [A] claimant must at least (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22. Generally, the claimant meets the criteria for presumptive disability under section . . . 12.05(C) when the claimant presents a valid IQ score of 60 through 70 inclusive, and when the claimant presents evidence of an additional mental or physical impairment significantly affecting claimant's ability to work.

*Crayton v. Callahan*, 120 F.3d 1217, 1219-20 (11th Cir.1997); *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (finding that a valid IQ score need not be conclusive of mental retardation when the IQ score is inconsistent with other evidence in the record concerning the claimant's daily activities and behavior).

The Eleventh Circuit, however, also has determined that an ALJ is not required to base a finding of mental retardation on the results of an IQ test alone when he evaluates whether a claimant meets the requirements of Listing 12.05(C). *Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986); *see also Strunk v. Heckler*, 732 F.2d 1357, 1360 (7th Cir. 1984) (finding that no case law "requir[es] the Secretary to make a finding of mental retardation based *solely* upon the results of a standardized intelligence test in its determination of mental retardation"). An ALJ is required to base his determination of mental retardation on the combination of intelligence tests and the medical report. ALJs evaluate intelligence tests "to assure consistency with daily

---

[2]*McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) was a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See*, *e.g.*, *Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

activities and behavior." *Popp*, 779 F.2d at 1499. If intelligence tests are inconsistent with the medical record and/or the claimant's daily activities and behavior, good reason exists for the ALJ to discredit the intelligence test. *Popp*, 779 F.2d at 1500.

## V. FACTS

The claimant was fifty years old at the time of the ALJ's decision. (R 24, 185).  The claimant has an eighth grade education, and has past relevant work experience as a cleaner and gatherer (her job as a gather consisted of collecting aluminum cans). (R. 23, 48, 190-95). The claimant alleged that she was disabled by back problems, arm problems, poor vision, difficulty reading, and stress. (R. 37, 46, 244).

### *Physical Limitations*

While the issue deals primarily with the claimant's mental limitations, as discussed below, the claimant suffered some physical limitations.  The Social Security Administration sent the claimant to see both a physician, Dr. Tobing-Ruiz, and a psychologist, Dr. Storjohann, in response to the claimant's application. (R. 38).  The claimant indicated that she has problems with her back, arms, and vision. (R. 37, 46, 244).

Dr. Tobing-Ruiz examined the claimant on February 28, 2012 at the  request of the Social Security Administration. (R. 327).  Dr. Tobing-Ruiz found that the claimant had a vision deficit, mild strength deficit of left hand, and back strain. (R. 328). The claimant asserts that she did not have the money to visit any doctors, but does wear reading glasses. (R. 39).

### *Mental Limitations*

The record reflects that the claimant has a limited eighth grade education. (R. 333).  On November 1, 1977, Munford High School in Talladega County, Alabama approved the claimant

for Special Education Placement in the Jr. High EMR (educable mentally retarded). (R. 178).

The claimant filed a prior application for Title XVI Supplement Security Income benefits The Social Security office attempted to provided psychometric testing with Dr. Robert Estock on April 29, 2009; however, the claimant was in jail and unable to participate in the evaluation.  As a result, Dr. Estock indicated that insufficient evidence existed for him to complete a Psychiatric Review Technique for the claimant.  (R. 310-323).

In the current application for SSI benefits, the Social Security Administration referred the claimant to Dr. Stororjohann, who evaluated the claimant on February 15, 2012. (R. 332-36). Dr. Storjohann's diagnosis of the claimant was depressive disorder and mild mental retardation. (R. 335).  Dr. Storjohann noted that the clamant had marked deficits in her ability to understand, carry out, and remember instructions in a work setting, and moderate deficits in her ability to respond appropriately to supervision, coworkers, and work pressures in a work setting. (R. 335). Dr. Storjohann administered the Wechsler Adult Intelligence Scale-IV IQ test that assessed the claimant with a Full Scale IQ score of 67. ( R. 335).  Dr. Storjohn interpreted the test as demonstrating a verbal comprehension Index of 63, a perceptual reasoning Index of 79, a Working Memory Index of 71, and a Processing Speed Index of 76. (R. 335).   Dr. Storjohan stated that "the prognosis for the coming 6 to 12 months is considered to be poor given her intellectual limitations and her reported heath problems." Dr. Storjohann noted that "Ms. Mitchell put forth good effort.  The test results appear to represent an accurate appraisal of her current abilities." (R.334-335).

At the request of the Social Security Administration, Dr. Estock completed a "Mental Residual Functional Capacity Assessment" of the claimant on March 13, 2012 by reviewing her

medical records.  In his assessment, Dr. Estock found that the claimant was moderately limited in

her ability to understand, remember and carry out detailed instructions but could understand and

follow one to two stop procedures; was moderately limited in her ability to maintain attention

and concentration for extended periods but can maintain them for a two hour period; can

complete an eight hour work day with regular breaks; needs a flexible work schedule; should

have casual contact with the public; must have non-confronting criticism from supervisors; and

needs infrequent and gradual changes in her work settings. (R. 64-66).

*The ALJ Hearing*

After the Commissioner denied the claimant's request for disability insurance benefits

and supplemental security income, the claimant requested and received a hearing before an ALJ

on August 15, 2013.  At the hearing, the claimant testified that she is unable to work primarily

because of stress and vision issues. (R. 38-39).

According to her testimony, the claimant experienced crying spells that interfered with

her work. She claimed that these crying spells were because of  anxiety over not having custody

of her two children, who are in the custody of their father.  The claimant and the children's father

were involved in a common-law marriage; however, at the time of the hearing, the claimant was

separated from her common-law husband.   The claimant expressed her obligation to pay child

support to the ALJ; yet she did not understand fully why she was ordered to do so.  The claimant

stated that she lives with her mother and two sisters, who are all disabled. (R. 43, 47-50).

The claimant has not payed her own bills since her marriage, does not have a checking

account or credit card, and does not write any checks.  The claimant testified that on a regular day

she does yard work or walks and picks up aluminum cans for scrap; she can follow a grocery list,

but cannot read or write any complex words; the claimant has no issues with bathing herself; she does not attend any social activities; and she stays at home to relax. (R. 39, 41-45). Additionally, the claimant described tingling in her hands that interferes with her ability to grip objects  (R. 44-47). Also, the claimant stated that she could not recall whether she only started eighth grade or completed the eighth grade.

A vocational expert, Dr. Paul Peacock, testified concerning the type and availability of jobs the claimant was able to perform. (R. 48-51).  After obtaining clarification from the claimant on the type of work completed, Dr. Peacock categorized the claimant's work history as gatherer and a cleaner, both "light and unskilled with an SVP of 2."  (R.  48).  The ALJ then asked the vocational expert three hypothetical questions about the  claimant's ability to perform work in the national and regional economy.

The first hypothetical included a younger individual with limited education and no medically determinable physical impairment of any significance, but this individual had mental impairments that produce functional limitations; can understand, remember, and follow two-step procedures; can maintain attention and concentration for two-hours periods; and can complete an eight-hour workday with regular breaks. Dr. Peacock stated that this individual could perform any of the claimant's past relevant work and light jobs such as a bagger with 340 positions in Alabama and 58,000 positions nationally, floor worker with 410 jobs available in Alabama and 67,000 nationally, and tray filler with 310 jobs available in Alabama and 51,000 nationally. (R. 49).

The ALJ then posed the second hypothetical by changing the hypothetical fact pattern to include the fact that the individual has a full scale IQ score of 67 and has been diagnosed with

mild mental retardation.  The change in hypothetical number two did not change Dr. Peacock's

answer. (R. 50).

The ALJ then asked a third hypothetical question dealing with the number of work breaks

allowed, and number of days a person could miss, in relation to these jobs. Dr. Peacock stated

standard breaks for these type of jobs would be 15 minutes in the morning, 15 minutes in the

afternoon, and about a 30-minute lunch break. In addition, individuals in these types of jobs

typically are allowed only two to three work days off based on information and publication.  (R.

50-51).  Dr. Peacock testified that, if someone with the same vocational profile was off task more

than 15 or 20 percent of the time, the person could perform no work. (R. 51-52).

*The ALJ Decision*

On January 10, 2014, the ALJ issued a decision finding that the claimant was not disabled

under the Social Security Act. (R. 13, 16-29).   The ALJ did find that the claimant had not

engaged in substantial gainful activity since October 28, 2011, the application date.  The ALJ

also found that the claimant had the severe impairment of organic mental disorder.  The ALJ

found this impairment to be severe, "significantly limit[ing] [the claimant's] physical or mental

ability to do basic work activities," as defined in sections 404.1520(c) and 416.920(c). 20 C.F.R.

§§ 404.1520(c), 416.920(c) (2013). (R. 18).

The ALJ then considered the complete medical history consistent with 20 C.F.R. §

416.335.  The ALJ concluded that the medical evidence did not show the claimant suffers from

any debilitating symptoms or limitations associated with any  physical impairment. (R. 18).  The

ALJ compared the claimant's mental impairment to Listings §§ 12.02 and 12.04., and the ALJ

then found that the claimant did not meet either listing.  The ALJ did not mention or discuss

whether the claimant met the listing requirements of Listing 12.05. (R. 20).

The ALJ supported his assessment by reviewing the claimant's school records, the testimony of the claimant, the consultative evaluation by Dr. Storjohann, the mental residual functional capacity assessment by Dr. Estock, and the examination of Dr. Tobing-Ruiz.(R. 22-23).  Following the review of the claimant's records and evaluations, the ALJ found the claimant's severe impairment to be non-disabling.

Following the ALJ's finding of "non-disabling" for the claimant's severe impairment, the ALJ, when considering the evidence, gave significant weight to the opinion of the State agency physician, Dr. Estock, a consulting physician. The ALJ stated, that "[a]lthough he is not a treating or examining physician, he is deemed by regulation to be a highly qualified expert in Social Security disability evaluation. . .[and] his opinion is consistent with the objective medical records."

The ALJ gave little weight to the opinions of Dr. Storjohann, the doctor who administered the IQ test.  The ALJ stated that "his diagnostic impressions show internal inconsistencies regarding IQ scores in the borderline range and inconsistency of the other evidence of record, particularly the claimant's adaptive functioning traits as demonstrated by [the claimants] activities of daily living." Also, the ALJ indicated that, "Dr. Storjohann made no statement that the claimant's test scores were valid and his assessment was couched in uncertain terms such as 'appears to have.'"

Additionally, the ALJ gave good, but little weight to the opinion of Dr. Tobing-Ruiz because her statement is based "to some extent" on the claimant's statements dealing with her capabilities. (R. 23).

The ALJ next considered the claimant's opinion evidence, and subjective allegations of pain and other symptoms (R. 15). He determined that the claimant had

10

the residual functional capacity to perform a full range of work at all external levels but with the following non-external limitations: the claimant is able to understand, remember and follow 1 to 2 -step procedures . . . maintain attention and concentration for two-hour periods. She needs a flexible work schedule and should have only casual contact with the public.  Criticism should be non-confrontational.  Changes in work settings should be infrequent and gradually introduced.

(R. 21).

The ALJ found that the claimant's impairments "could reasonably be expected to cause the alleged symptoms," but the claimant's assertions of her symptoms were not credible regarding their "intensity, persistence and limiting effects" beyond the ALJ's assessment of her residual functional capacity. (R. 22).

Based on "the available objective evidence treatment records, the claimant's activities [and] the available acceptable medical sources," the ALJ found that the claimant's impairments did not prevent the claimant from performing her past relevant work as a cleaner and as a gather. (R. 23). Additionally,  based on the vocational expert's testimony the ALJ determined that other jobs exist in the national economy that the claimant could  perform, such as a bagger or floor worker. Therefore, the ALJ concluded the claimant was not disable under the Social Security Act. (R. 25).

## VI. DISCUSSION

The claimant argues that the ALJ improperly failed to consider Listing 12.05(C) , for "mental retardation" in light of the full scale IQ score of 67 found by the state agency consulting psychologist Dr. Storjohann,.  This court agrees and finds that the ALJ erred by not considering the claimant's presumptive disability under Listing 12.05(C).

If the claimant meets or equals a Listing, the Commissioner must  find the claimant disabled. *See McDaniel*, 800 F.2d at 1030.  To meet Listing § 12.05(C), the claimant  must show

that she has subaverage general intellect manifested before age twenty-two, provide a full scale IQ of 60 through 70 *and* another physical or other mental impairment. The ALJ may rebut evidence of the claimant's IQ score, or presumptive deficits in adaptive functioning *if* the record evidence, including medical evidence, is inconsistent with her daily activities and behavior. *Popp*, 779 F.2d at 1499-1500.

In the present case, to meet her burden, the claimant presented that she had a full scale IQ score within the range of Listing 12.05(C), documents noting her qualification as a special education student in the Jr. High EMR (educably mentally retarded),  and evidence that she only completed eighth grade. Despite this evidence in the record, the ALJ did not even discuss or consider whether the claimant met a Listing under 12.05(C). This failure constituted error because he did not apply the proper legal standard regarding the claimant's IQ score.

Instead, all the ALJ did was give reasons unsupported by substantial evidence to discredit Dr. Storjohann's opinions. First the ALJ, in addressing the validity of the IQ score stated that, "No statement regarding the validity of the scores was made." However, this reason directly contradict the record and is plain wrong. Even the Commissioner concedes in his brief the ALJ was wrong. (Doc. 10 p. 11).  In fact, Dr. Storjohann stated, "Ms. Mitchell put forth good effort. The test results appear to represent *an accurate appraisal of her current abilities*." (R.334) (emphases added).  Dr. Storjohann did not suggest that the claimant was untruthful, attempted to embellish her answers to the IQ test, or that the scores underrepresented the claimant's true intelligence level. The facts that the claimant was in special education classes and only completed the eighth grade support the IQ score of 67. Although Dr. Storjohann is not a treating physician in the instant case, he actually examined the claimant and is the *only* physician to

12

preform  IQ testing. If the ALJ had acknowledged that Dr. Storjohann did state the validity of the IQ test,  he may have given proper weight to Dr. Storjohann's opinions, and as a result would have evaluated the claimant under Listing 12.05(C).

The ALJ also gave little weight to Dr. Storjohann's overall  opinions because he used the language "appears to have" in describing her mental abilities. But the ALJ fails to explain specifically any inconsistences. Simply making conclusory statements without analysis does not pass muster.  Using the term "appears to have" does not void the IQ testing itself or the resulting 67 IQ score.

 In *Slater v. Astrue*, the court held that the claimant had provided sufficient information dealing with his mental condition, and concluded that the ALJ erred as a matter of law when he did not consider Listing 12.05. 2012 U.S. Dist. Lexis 39576 at * 19 (M.D. Ala. Mar. 23, 2012). The claimant presented full scale IQ scores of 64, 62, and 60. *Id.*   The court made a "limited ruling that the issue of mental retardation pursuant to listing 12.05(C) was raised sufficiently by [claimant] to show a prima facie case of a possible ailment that. . . the ALJ failed to address."  Id at * 15.  The court ruled that these errors by the ALJ warranted remand to determine whether the IQ score was valid, as well as if other mental or physical impairments would cause the claimant to meet Listing 12.05.  *Id*. at * 19.

In the present case, the claimant presented an IQ score, in the requisite range, determined by a qualified state agency psychologist; school records indicating the claimant was in special education classes; testimony that she only completed the eight grade; and evidence of a severe impairment of organic mental disorder. However, despite all this evidence pointing to the claimant possibly meeting Listing 12.05(C) the ALJ failed to discuss that history.  That failure

was reversible error.

For these reasons, the court concludes that the Commissioner erred as a matter of law, and that the case warrants remand for further proceedings regarding whether the claimant meets Listing 12.05(C).

## VII. CONCLUSION

For the above reasons, this court concludes that the ALJ failed to apply the proper legal standard by not discussing Listing 12.05(C). Therefore, this court will REVERSE and REMAND the Commissioner's decision for the ALJ to determine whether the claimant is entitled to Disability Insurance Benefits or Supplemental Security Income Payments consistent with this opinion.

The court will enter a separate Order in accordance with this Memorandum Opinion.

DONE and ORDERED this 13th day of September, 2016.

_Karon O. Bowdre_
KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE